SAGINAW VALLEY LUMBER DEALERS' ASS'N v. MICHIGAN PUBLIC UTILITIES COMMISSION.

CARRIERS—CARS USED WHOLLY IN INTRAPLANT SERVICE SUBJECT TO DEMURRAGE CHARGE.

Where cars loaded with logs are hauled into a lumber yard, and, after being unloaded, are used wholly within the plant for transporting freshly-sawed lumber to the dry

Carriers, 10 C. J. § 734.

kiln and to the place where it is piled for storage, such use is not a "loading" or "unloading" within the meaning of the tariff filed under 2 Comp. Laws 1915, § 8118, relating to demurrage while retained for said purpose, but comes within the provisions of an amendment to said tariff providing for a demurrage charge.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted October 13, 1927. (Docket No. 108.) Decided April 3, 1928.

Bill by the Saginaw Valley Lumber Dealers' Association and others against the Michigan Public Utilities Commission and the Michigan Central Railroad Company to review a ruling of the commission respecting tariff rates. From a decree reversing the ruling of the commission, defendants appeal. Reversed.

*Beaumont, Smith & Harris* (*Thomas B. Moore,* of counsel), for plaintiffs.

*William W. Potter,* Attorney General, for defendant commission.

*Frank E. Robson* and *John J. Danhof, Jr.,* for defendant railroad.

Sharpe, J. In June, 1917, the plaintiffs filed a complaint with the then Michigan railroad commission, alleging that the Michigan Central Railroad Company was insisting on the payment by them of a demurrage charge for the detention of cars while used in their yards in wholly intraplant service, in violation of the tariff rules and regulations formulated by it, and prayed for an order that it desist therefrom. Proofs were taken before the commission and the complaint dismissed on the 10th day of May, 1918. On June 7, 1918, the plaintiffs filed their bill of complaint in the Ingham circuit court to review such order, as provided for by the statute (2 Comp. Laws 1915, § 8134),

and prayed for the granting of the relief asked for in their petition. Answers were filed by the commission and the railroad company. The cause came on for hearing in 1923. By stipulation the proofs submitted to the commission were treated as the record in the case. On November 5, 1923, a decree was entered, granting to the plaintiffs the relief prayed for. The appeal of defendants therefrom was submitted to this court at the October, 1927, term thereof.

The question presented involves a construction of the tariff of the railroad company. Under section 8118, 2 Comp. Laws 1915, then in force, it was the duty of the railroad company to file with the commission, and keep open for public inspection in all its depots and offices, schedules showing all rates, fares, and charges for transportation, both of passengers and property, "between different points on its own route." * * * These schedules should contain the classification of freight,—

"and shall also state separately all terminal charges * * * and any rules or regulations which in anywise change, affect or determine any part of or the aggregate of such aforesaid rates, fares and charges or the value of the service rendered to the * * * shipper or consignee: *Provided*, That where local switching tariffs are in effect at a competitive point, it shall be sufficient if the schedule state that the terminal charges shall be subject to the rules of such local switching tariffs."

No change could be made in any schedule except upon the notice therein provided for. These schedules constituted the tariff of rates.

The plaintiffs are manufacturers of and dealers in lumber and forest products in the Saginaw valley. The mills and yards of W. D. Young & Company are taken by counsel on both sides as typical of the manner in which these products are handled in them all. Logs

on flat cars are hauled into this plant by the railroad company, and the cars placed at the log pond, or tank, where they are unloaded.   The usual transportation service is then ended.   The logs are then drawn into the mill and sawed into lumber.   The empty cars are placed at the tail of the mill, where they are loaded with the freshly-sawed lumber and switched to that part of the yard where the lumber is piled for curing or storage.   Cars are also used for conveying the lumber from the piles to the dry kiln and the planing mill.   Twenty or more cars were so employed and remained within the yard from one day to several weeks, at the time the petition was filed.

For convenience in the consideration of the Tariff Rules discussed by counsel, they are set forth in the margin as they appear in the record.   On May 3, 1915, General Rule 6 was amended by the addition to it of paragraph (b).   Under this provision the railroad company claims the right to collect demurrage on cars used and detained in plaintiffs' plants for intra-plant service.   It had proof tending to show that the amendment was adopted in order to secure to it reasonable compensation for the use made of its cars while in such service.   It is apparent, as pointed out by

---

GENERAL RULES.

(Applicable at all stations except as otherwise specifically provided for in this tariff.)

Local Movement Within Industrial Plants.

Rule 6.   (a) Cars switched within the confines of any one industry or plant by this company will be subject to a charge of $1 per car for each movement.

(b) Demurrage charges as per tariff lawfully in effect will apply while the car is in the possession of the industry or plant. Time will be computed from the time the car is delivered to the industry or plant, until released, and the movement of such car within the confines of the industry or plant will not be considered a new movement of the car so far as concerns the assessment of demurrage charges.

the commission, that, if not able to collect demurrage under this amendment, then, in view of the free time allowed under the other rules relating thereto, no demurrage would be likely to accrue while the cars were so used.

Counsel for the railroad concede that the switching charge provided for in paragraph (a) of Rule 6 has no application to such service, for the reason that Special Rule 6 (applicable alike to Bay City and Saginaw) provides therefor. But it insists that this special rule applies only to the switching charge for cars loaded with lumber or forest products in the yards at Bay City and Saginaw; that it contains no reference to demurrage charges, and in no way relieves plaintiffs from the charges therefor in paragraph (b), while plaintiffs claim that as General Rule 6 is applicable only at stations "except as otherwise specifically provided for in this tariff," and, as there is a provision under Special Rule 6 for the handling of lumber and forest products at Bay City and Saginaw, they are not affected by the provision therein for demurrage.

Rule 12 provides that "Traffic handled under this

CAR DEMURRAGE RULES AND STORAGE RULES AND CHARGES.
Michigan Intrastate
Applicable at Stations in the State of Michigan
on Intrastate Traffic Only.

Rule 1.  Cars Subject to Rules
Cars held for consignors or consignees for loading, unloading, forwarding directions, or for any other purpose, are subject to these car demurrage rules except as follows:
(Cars used in intraplant service are not included within the exceptions.)

Rule 2.  Free Time Allowed.
(a) Except as hereinafter provided forty-eight hours (two days) free time will be allowed for loading and unloading on all commodities.
(Cars used in intraplant service are not included within the exceptions.)

tariff will be subject to car demurrage and storage charges and rules as per tariffs." * * * Were it not for the provisions in Special Rule 6 relating to the handling of lumber and forest products at Bay City and Saginaw, the several provisions relating to de-- murrage would be easily understood. This rule apparently contemplates the movement of cars between locations within the yard just as was done; that is, the switching of an empty car to the tail end of the mill for loading and its movement when loaded to the place for piling, etc. The demurrage charges provided for in the other rules, except that amended, relate only to cars when held for "loading and unloading." These words have, we think, a well-defined meaning when used in connection with the transportation of freight by railroads. Free time is allowed therefor. When a car is placed for loading at a shipper's request, it is with an implied undertaking that it will be loaded within the time fixed by the rules, and, after it is loaded, the railroad will be directed by a bill of lading to be issued by it, at the request of the shipper, to transfer it to some point involving a movement outside the plant or yard of the shipper. When left for unloading, there is an undertaking that the load

---

Rule 2.

But—

(c) Three days free time will be allowed for unloading cars with:

2. Lumber, except cargo and lightered lumber.
Page 14—

Rule 6. Cars for Loading.

(b) When empty cars placed for loading on order are not used, demurrage will be charged from the first 7 a. m. after placing or tendering until release, with no time allowance.

Rule 7. Demurrage Charge.

(a) After the expiration of the free time allowed, a charge of one dollar ($1.00) per car per day, or fraction of a day, will be made until car is released. This charge is included in and is not in addition to the charges named in section (b).

will be removed by the consignee and the car released for further service within the time allowed by the rules therefor. In either event, if the shipper or consignee fails to perform within the time limited therefor, the charges for demurrage attach.

It seems clear to us that the use made of the cars after they had been unloaded in plaintiffs' yards, and until they were reloaded for shipment to a point outside their yards, was not a "loading" or "unloading" within the meaning of these words as used in the provisions of the tariff relating to demurrage. Plaintiffs' counsel urge that they become so by reason of the provisions in Special Rule 6, applicable only to the yards in Bay City and Saginaw. With this contention the trial court was in accord, and his decree was based thereon. The rule says nothing about a demurrage charge. It simply provides for a switching charge for any movement "between any two locations within one lumber yard or between any two locations within the yard of a planing mill or industrial plant." It does not apply to cars which are brought into or taken out of the plant under load. It applied solely to those used in intraplant service not related to transportation or intended transportation.

---

Rule 12.

Traffic handled under this tariff will be subject to car demurrage and storage charges and rules as per tariffs lawfully on file with the interstate commerce commission as to interstate traffic, and with other railroad commissions as to traffic subject to their jurisdiction.

---

SWITCHING CHARGES AND RULES
AT SPECIFIED POINTS
BAY CITY (East and West Sides), MICH.

---

Lumber and Forest Products

6. Lumber or forest products switched between any two locations within one lumber yard or between any two locations within the yard of a planing mill on industrial plant will be charged $1 per car for each switch movement.

The tariff contains no charge applicable to the use of the cars when in intraplant service, and for which this switching charge is made.    To accord plaintiffs the right to the use of these cars without charge, except for switching when and where requested, would amount to a discrimination in their favor, which the law will not permit.    This the railroad company seeks to avoid by its charge for demurrage provided for in the amendment.    This amendment in no way modifies or changes the provision of the special rule relating to the switching charges.    It but adds a provision fixing a demurrage charge in conformity with the provisions of Rule 12.

We have not overlooked what is termed the average agreement which the parties entered into relative to demurrage charges, but in our opinion it has no application to the intraplant use of the cars made by plaintiffs.    It applied only to cars containing inbound and outbound shipments, those held for "loading and unloading."

The interstate commerce commission had occasion to consider a somewhat similar question in *American Smelting & Refining Co.* v. *Railroad Co.*, 56 I. C. C. 195.    In that case the tariff rules of the railroad had no provision for payment for the use of cars used by the complainant in intraplant service, but a charge of one dollar per car per day had been made for each car so detained.    In the proceeding before the commission the complainant sought to enjoin the collection of a higher charge.    The opinion is instructive on the question before us.    In denying relief it was said:

"The cars taken from defendant were not used for the transportation of property; defendant rendered no service in connection with them in transportation or otherwise; they were used only for the individual requirements of complainant and were thereby detained from defendant's possession and removed from ordinary service in transportation during such use. They were a part of the general equipment legally be-

longing to and under the control of defendant. For defendant to permit complainant to occupy and use such equipment for its own purposes, thereby withdrawing the cars to that extent from service for other shippers at rates or charges or rentals less than those charged against others for similar occupation and use, would be clearly unlawful."

The decree appealed from is reversed and set aside, with costs to the defendants, and the order of the commission restored.

FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

The late Chief Justice FLANNIGAN and the late Justices SNOW and BIRD took no part in this decision.